UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KYNDRA FRAZIER,

                  Plaintiff,

    v.

FCBC COMMUNITY DEVELOPMENT
CORPORATION and
MICHAEL WALROND,

                  Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Kyndra Frazier ("Plaintiff") hereby alleges, through her attorneys Berke-Weiss Law PLLC, against Defendants First Corinthian Baptist Church Community Development Corporation (the "Corporation") and Michael Walrond ("Walrond," and together with the Corporation, "Defendants"), as follows:

PRELIMINARY STATEMENT

1.    Plaintiff is the former Executive Director of the Healing On Purpose and Evolving Center (the "HOPE Center"), a mental health facility run by the Corporation, a not-for-profit charitable organization that develops affordable housing and educational programs in Harlem.

2.    Despite the HOPE Center's vision being "to empower and support [their] community in the process of creating and sustaining life-long wellness" and one of the values by which they are working toward this vision being "unwaveringly striv[ing] to treat every individual with dignity," Defendants failed to pay Plaintiff any wages for the Executive Director role she performed for the HOPE Center throughout the entirety of her employment by the Corporation.

3.      This action is brought to recover unpaid wages pursuant to the New York Labor Law §§ 190 *et seq*. ("NYLL").

4.      Plaintiff also brings claims for Defendants' failure to provide proper wage notices and wage statements, pursuant to NYLL §§ 190 *et seq*.

5.      Plaintiff seeks compensation for unpaid wages, liquidated damages, pre-judgment and post-judgment interest, and attorneys' fees and costs pursuant to the NYLL.

JURISDICTION AND VENUE

6.      Jurisdiction of this Court is based on diversity of citizenship under 28 U.S.C. § 1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7.      As the unlawful policies and practices complained of herein occurred within the Southern District of New York, venue is proper in this District pursuant to 28 U.S.C. § 1391.

THE PARTIES

8.      Plaintiff is an individual residing in the State of North Carolina.

9.      Throughout the relevant time period, Plaintiff worked as the Executive Director of the HOPE Center, an initiative of the Corporation, in New York City from on or about November 1, 2016, until June 2, 2020.

10.     Throughout the relevant time period, Plaintiff also worked as an Associate Pastor at First Corinthian Baptist Church (the "Church"), a role for which she was paid.

11.     Plaintiff worked in New York City throughout the relevant time period.

12.     Defendant Corporation is a charitable non-profit corporation organized and existing under the laws of the State of New York with a principal place of business at 1912 Adam Clayton Powell Jr. Blvd, New York, NY 10026.

13.     As a direct initiative of the Corporation, and not its own entity, the HOPE Center receives its funding through the Corporation.

14.     Defendant Corporation is a covered employer within the meaning of the NYLL, and at all relevant times, employed Plaintiff.

15.     Defendant Walrond is the Board President of Defendant Corporation.

16.     At all times during the relevant time period, Defendant Walrond exercised sufficient control over the HOPE Center's operations to be considered Plaintiff's employer under the NYLL, and at all times material herein established and implemented the pay practices at the HOPE Center.

17.     Defendants Corporation and Walrond had control over Plaintiff's working conditions and over the unlawful policies and practices detailed in this Complaint.

18.     Defendants Corporation and Walrond, either directly or indirectly, hired Plaintiff, and controlled her work schedule and employment conditions, determined her payment rate and method, held her out as the Executive Director of the HOPE Center, and kept at least some records regarding her employment.

<u>STATEMENT OF FACTS</u>

19.     Pursuant to the New York Labor Law § 190, et seq. ("NYLL"), Plaintiff brings this action to recover unpaid wages.

20.     Plaintiff and Defendant Walrond met when she joined the Church while attending Columbia University in 2012.

21.     Defendant Walrond was the Senior Pastor at the Church in 2012 and remains in this position today.

22.     Plaintiff moved to Atlanta, Georgia in May 2014, and Defendant Walrond asked her whether she would be interested in helping him establish a branch of the Church in Atlanta. Though that plan did not come to fruition, the two stayed connected.

23.     In the Spring of 2016, Defendant Walrond convinced Plaintiff to move back to New York City by extending an offer to work at the Church as an Associate Pastor.

24.     Defendant Walrond told Plaintiff that he wanted to develop a separate mental health facility to serve Harlem residents, and would want her to lead this facility.

25.     Plaintiff is uniquely qualified to develop a mental health facility, since she holds both a Master of Divinity degree from Emory University School of Theology and Master of Science from Columbia University School of Social Work. Plaintiff is licensed by New York State as a qualified Master Social Worker.

26.     Plaintiff moved back to New York City in October 2016 to begin working as an Associate Pastor at the Church.

27.     Defendant Walrond hired Plaintiff as Associate Pastor of Pastoral Care and Counseling at the Church on November 1, 2016, and she was employed there until June 2, 2020.

28.     Plaintiff received an annual salary of $60,000 from the Church, and a housing stipend of $15,600 per year for her work as the Associate Pastor.  Plaintiff was paid the same rate throughout her employment.

29.     Plaintiff's offer letter from the Church did not include any reference to Defendant Corporation or the HOPE Center.

30.     Defendant Walrond hired Plaintiff as the Executive Director of the HOPE Center in or around November 2016, a position she held until her termination by Defendant Walrond on June 2, 2020.

31.     Plaintiff never received an offer letter for the Executive Director position.

32.     Despite Defendant Walrond being in the leadership of both organizations, the Church and the Corporation are separate and distinct organizations, with separate organizational documents filed with New York State and separate 990s filed with the federal government.

33.     The Corporation and the Church operate out of separate addresses.

34.     As an initiative of the Defendant Corporation, the HOPE Center has its own staff. None of the current staff members of the HOPE Center, including the Executive Director, are currently employed by the Church.

35.     Defendant Corporation does not reference the Church in the IRS Form 990s it filed in 2019 or 2020. The Corporation states that it is a non-profit organization, not a religious organization, in its IRS filings in order to receive its financial support from the public or government agencies.

36.     Defendant Corporation's IRS Form 990s from 2017 through 2020 state that it is not affiliated with any other organizations, holding the Corporation out to be a standalone nonprofit.

37.     The Corporation's IRS Form 990s also state that the Corporation paid $210,951 in salaries in 2019 and $230,957 in salaries in 2020. In its last publicly available 990, from fiscal year 2020, the Corporation made just under $500,000 in total revenue.

38.     Defendant Corporation explicitly serves all members of the Harlem community.

39.     Defendant Walrond verbally assured Plaintiff that she would be paid an additional salary, on top of the pastoral salary she received from the Church, after she successfully submitted grants for the HOPE Center.

40.     Plaintiff's pastoral role at the Church was distinct from her nonreligious, mental health work at the HOPE Center.

41.     Plaintiff was both an employee of the Church and the HOPE Center, working two full-time jobs.

42.     Between her two roles, Plaintiff was working up to 80 hours a week from in or around November 2016 until her termination on June 2, 2020.

43.     Plaintiff generally worked at the Church on weeknights and weekends. As Associate Pastor, she was responsible for attending music department rehearsals and conducting multiple hours of trainings on trauma-informed congregational care on Saturdays. Additionally, Plaintiff worked at the Church from 7am to 2:30pm every Sunday, attending church and preaching to the congregation multiple times a month. Plaintiff also attended over two hours of staff meetings per week at the Church, taught bible studies multiple times a month, and taught a spiritual formation class every semester. Outside of the time she spent physically at the Church, Plaintiff worked extensively to prepare for the teaching, training, and preaching she did at the Church.

44.     Plaintiff generally worked from her office at the HOPE Center, which is down the block from the Church, from Tuesday to Friday, 11am to 7pm, and on Saturdays from 11am to 3 or 4pm, spending at least 36 hours per week solely on HOPE Center work.

45.     As the Executive Director of the HOPE Center, Plaintiff had responsibilities which included: creating relationships with schools to host social work students; supervising social work students' clinical work; creating a relationship with Columbia University's Department of Psychiatry, for grant purposes, as well as offering mental health first aid training and additional programming; managing relationships to offer free psychiatric evaluations and

referrals for medication management for HOPE Center clients; working on grant proposals to strengthen the HOPE Center's services; attending HOPE Center staff meetings; and leading grief groups and mental health first aid trainings in conjunction with Columbia University.

46.     As part of her role as Executive Director, Plaintiff applied for grants and opportunities on behalf of the HOPE Center that would not have been available to the Church because of its status as a religious organization.

47.     In these grants, Plaintiff included her requested salary, $120,000.00, as a line item that grant funds would be used to cover.

48.     Notwithstanding Defendant Walrond's promise to pay her a salary for her separate role as Executive Director, Plaintiff was never paid any wages for the work she performed for the HOPE Center.

49.     Despite not receiving any wages, wage notices, pay statements, offer letter or employment agreement from the HOPE Center, Plaintiff worked as the Executive Director of the HOPE Center since its official opening in December 2016 through her termination, and was publicly held out as the HOPE Center's Executive Director throughout the entirety of this time.

50.     Plaintiff also wrote the 2019 HOPE Center Annual Report, where she is listed as the Executive Director. This was the first Annual Report written for the HOPE Center.

51.     On June 2, 2020, after having raised complaints to Defendant Walrond about how he was running the Church, Plaintiff was abruptly terminated from her employment at the Church as well as her employment at the HOPE Center.

52.     Plaintiff received a termination letter on Church letterhead, stating that her employment with both the Church and the HOPE Center was terminated, terminating Plaintiff's ability to receive compensation for her three and a half years of work at the HOPE Center.

FIRST CLAIM
(New York Labor Law - Failure to Pay Wages)
Against Both Defendants

53.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 52 of this Complaint as if set forth fully herein.

54.     At all relevant times, Plaintiff was an employee within the meaning of NYLL § 190 *et seq.*, and any supporting New York State Department of Labor Regulations.

55.     At all relevant times, Defendant Corporation has been an employer within the meaning of NYLL § 190 *et seq.*, and any supporting New York State Department of Labor regulations.

56.     At all relevant times, Defendant Walrond has been an employer within the meaning of NYLL § 190 *et seq.*, and any supporting New York State Department of Labor regulations.

57.     Defendants willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiff her minimum wage for all hours worked.

58.     As a result of Defendants' violations of the NYLL, Plaintiff is entitled to recover her unpaid wages, reasonable attorneys' fees and costs of the action, liquidated damages, and pre- and post-judgment interest pursuant to NYLL §§ 663(1) *et seq*.

SECOND CLAIM
(New York Labor Law – Wage Statement Violations)
Against Both Defendants

59.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58 of this Complaint as if set forth fully herein.

60.     At all relevant times, Plaintiff was an employee within the meaning of NYLL § 190 *et seq.*, and any supporting New York State Department of Labor Regulations.

61.     Defendants have willfully failed to supply Plaintiff a proper wage statement as required by Article 6, § 195(3).

62.     Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants two hundred fifty dollars ($250.00) for each day that the violations occurred, or a total of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, § 198(1-b), liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

THIRD CLAIM
(New York Labor Law – Wage Notice Violations)

63.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 62 of this Complaint as if set forth fully herein.

64.     At all relevant times, Plaintiff was an employee within the meaning of NYLL § 190 *et seq*., and any supporting New York State Department of Labor Regulations.

65.     Defendants willfully violated Plaintiff's rights by failing to provide her with the wage notices required by NYLL, Article 6, § 195 when she was hired, or at any time thereafter, containing Plaintiff's rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

66.     Due to Defendants' violations of the NYLL, Plaintiff is entitled to recover from Defendants fifty ($50.00) for each day that the violations occurred, or a total of five thousand

9

dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, § 198(1-b), liquidated

damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-

judgment interest, and injunctive and declaratory relief.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

a.     A declaratory judgement that the practices complained of herein are unlawful

under the NYLL and New York Common Law;

b.     An injunction against Defendants and their officers, agents, successors,

employees, representatives and any and all persons acting in concert with Defendants, as

provided by law, from engaging in each of the unlawful practices, policies and patterns set forth

herein;

c.     An award of compensatory damages as a result of Defendants' failure to pay

minimum wages and overtime compensation pursuant to the NYLL and supporting regulations;

d.     An award of compensatory damages as a result of Defendants' failure to pay all

wages to which Plaintiff is entitled, pursuant to the NYLL and supporting regulations;

e.     An award for unpaid wages under NYLL;

f.     An award of liquidated damages and/or punitive damages as a result of

Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the

NYLL and supporting regulations;

g.     An award of liquidated damages for Defendants' failure to pay all wages to which

Plaintiff is entitled, pursuant to the NYLL and supporting regulations;

      h.    An award of two hundred fifty dollars ($250.00) for each day that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred, or a total of five thousand dollars ($5,000.00) as provided for by NYLL, Article 6 § 198(1-d);

      i.    An award of fifty dollars ($50.00) for each day that the violations of NYLL, Article 6 § 195(1), pertaining to distribution of wage notice, occurred, or a total of five thousand dollars ($5,000.00) as provided for by NYLL § 198(1-b);

      j.    An award of pre-judgement and post-judgement interest;

      k.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

      l.    Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
      June 22, 2022

                    BERKE-WEISS LAW PLLC

                    */s/ Alexandra Berke*
                    Alexandra Berke
                    150 East 52nd Street, Suite 21002
                    New York, NY 10022
                    212.888.2680
                    alex@berkeweisslaw.com