UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
KYNDRA FRAZIER,

                             Plaintiff,

    v.

FCBC COMMUNITY DEVELOPMENT
CORPORATION and MICHAEL WALROND,

                             Defendants.
-----------------------------------------------------------X

Case No.: 22-cv-05270

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

MILBER MAKRIS PLOUSADIS
 & SEIDEN, LLP
John J. Byrnes, Esq.
Attorneys for Defendants
1000 Woodbury Road, Suite 402
Woodbury, New York 11797
(516) 712-4000
Our File No.: 420-19501

Defendants, FCBC Community Development Corporation (hereinafter "FCBC") and Michael Walrond ("Pastor Walrond"), respectfully submit this Memorandum of Law, along with the Affirmation of John Byrnes ("Byrnes Aff."), and the Affidavit of Pastor Michael Walrond ("Walrond Aff."), in further support of their motion to dismiss the Complaint pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted.

**PRELIMINARY STATEMENT**

This is a matter in which an ordained minister is raising wage claims against her church and its Senior Pastor. In 2016, Plaintiff Reverend Kyndra Frazier ("Plaintiff" or "Reverend Frazier"), accepted a position as Associate Pastor of Pastoral Care ("Associate Pastor") for the First Corinthian Baptist Church (the "Church"), with salary of $60,000 per year. Complaint ¶¶ 27-28. In this role, Reverend Frazier delivered sermons, performed sacraments, and provided pastoral care and counseling to Church members. Additionally, she provided pastoral counseling through a Church program called the Healing On Purpose and Evolving or "HOPE" Center. Complaint ¶ 30. Reverend Frazier now attempts to misconstrue this aspect of Associate Pastor role, alleging that the pastoral services she provided through the Church's HOPE Center program somehow constitute an entirely separate job, for which she is suddenly owed three and a half years of wages (over and above the salary the Church has already paid to her). Reverend Frazier's own allegations concede, however, that she never received any employment documents or additional pay from the HOPE Center at any time during her three and a half years as Associate Pastor for the Church. Complaint ¶¶ 31, 51.

Significantly, Reverend Frazier only raises these unpaid wage claims now, following the Church's decision in or around June 2020 to remove her from her Associate Pastor position.

Complaint ¶ 51. Based on this, it seems reasonably clear that the current claims are little more than an attempt to improperly use the New York Labor Law ("NYLL") to exact some form of retribution upon the Church and its Senior Pastor, Reverend Walrond.[1]

It is equally clear that with respect to each of her claims, Reverend Frazier has either misapplied or completely disregarded the law. First, as an Associate Pastor of the Church, Reverend Frazier does not meet the definition of an "employee" under the NYLL. The NYLL defines an "employee" as "[…] any individual employed or permitted to work by an employer in any occupation, **but shall not include** any individual who is employed or permitted to work: […] (f) as **a member of a religious order, or as a duly ordained, commissioned or licensed minister** […]." N.Y. Lab. Law § 651 (emphasis added). Simply put, the NYLL does not apply to Reverend Frazier. As such, there is no legal basis for her current NYLL claims against the Church and Reverend Walrond. Defendants offer that for this reason alone, the Complaint should be dismissed in its entirety, with prejudice.

But second, even assuming *arguendo* that the NYLL did somehow apply to Reverend Frazier, it is clear from her own allegations that her role as Associate Pastor would have met the requirements of the NYLL professional exemption. Theological occupations are commonly recognized as exempt by the New York Department of Labor ("NYDOL"). *See*, the NYDOL "Professional Exemption Frequently Asked Questions," annexed to the Byrnes Aff. as **Exhibit "B."** As such, the minimum wage and overtime requirements of the NYLL would **still** not have applied to her, and Reverend Frazier's salary as Associate Pastor would have been considered to

---

[1] Plaintiff initially brought **discrimination** claims before the New York City Commission on Human Rights, but these claims were administratively dismissed following Defendants' arguments regarding the ministerial exemption. *See*, "Verified Complaint," and "Notice of Administrative Closure," annexed to the Walrond Aff. collectively as **Exhibit "3."** Plaintiff now brings allegations against the Church and its Senior Pastor for a second time, **but under a completely different theory of law**.

cover all of the hours she worked for the Church, **including** any time she alleges to have spent providing pastoral services through the HOPE Center program. Complaint ¶ 28. It would seem, therefore, that additional pay is not, nor has it ever been, owed to Reverend Frazier under any theory of law.

For the foregoing reasons, and the arguments presented below, Defendants respectfully request that the Court dismiss the Complaint in its entirety, with prejudice, and grant Defendants such other and further relief as may be deemed just and proper.

## STANDARD OF REVIEW

"A complaint may be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure where it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss, the Court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *Quinones v. New York City*, No. 19CV05400 (LJL) (DF), 2020 WL 5665142, at *3 (S.D.N.Y. Aug. 17, 2020), *report and recommendation adopted*, No. 19-CV-5400 (LJL), 2020 WL 6901340 (S.D.N.Y. Nov. 23, 2020) (internal quotes and citations omitted). Courts have routinely held, however, that a complaint may be dismissed with prejudice where "it is frivolous and leaves no doubt that plaintiff cannot allege facts sufficient to state a claim." *Cheng v. Jpmorgan Chase Bank, N.A.*, No. 15CV4308SJFAYS, 2016 WL 2343850, at *1 (E.D.N.Y. May 3, 2016). "A complaint is frivolous if it lacks an arguable basis in law or fact." *Coleman v. Suffolk Cnty.*, 154 F. App'x 250, 251 (2d Cir. 2005); *Rice v. Wartsila NSD Power Dev., Inc.*, 183 F. App'x 147, 148 (2d Cir. 2006) ("[D]ismissal [is] warranted where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

## **LEGAL ARGUMENT**

### **POINT I**

### **THE NEW YORK LABOR LAW DOES NOT APPLY TO REVEREND FRAZIER, AS SHE DOES NOT MEET THE DEFINITION OF AN "EMPLOYEE"**

"To recover under the NYLL, Reverend Frazier must prove that she was an 'employee' and that Defendants were 'employers' as defined by the statute." *Fermin v. Las Delicias Peruanas Rest.*, Inc., 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015). The NYLL defines an "employee" as "[…] any individual employed or permitted to work by an employer in any occupation, **but shall not include** any individual who is employed or permitted to work: […] (f) as **a member of a religious order, or as a duly ordained, commissioned or licensed minister** […]." N.Y. Lab. Law § 651 (emphasis added).

The Southern District has recently dealt with and analyzed this issue in *Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, No. 20-CV-3809 (JMF), 2021 WL 2206486, at *8 (S.D.N.Y. June 1, 2021). In that case, two nuns brought suit against their church for unpaid minimum wages and overtime under the NYLL, alleging that they never received pay for their participation in various church programs and activities, but their male counterparts within the church did receive pay. The Court dismissed the NYLL claims in their entirety, holding:

> "The New York Department of Labor has interpreted the term 'religious order' to mean 'a group of persons who are joined together under the authority of a religious leader, and are dedicated to the performance of religious works.' Plaintiffs do not — and could not — seriously dispute that the Archdiocese constitutes a 'religious order.' As is evident from the Amended Complaint, the Archdiocese and its clergy are 'dedicated to the performance of religious works,' […] and the group is joined together under religious leaders, […] And Plaintiffs were intimately involved in this 'religious order.' […]
>
> In spite of these facts, Plaintiffs argue that they were 'employees' for purposes of the NYLL because the Archdiocese viewed female clergy as 'laypeople.' But whatever that may mean, Plaintiffs also acknowledge that they viewed themselves

as 'nuns' and that they each held the formal title of 'nun.' Moreover, Plaintiffs explain that after becoming 'sanctified' nuns, they joined their 'Spiritual Father' in founding a monastery, where their primary employment duties included 'sing[ing] in the Mass' and 'run[ning] Mass services.' Thus, regardless of what the Archdiocese called Plaintiffs or how the Archdiocese viewed them, it is beyond reasonable dispute that they were permitted to work as members of a 'group of persons,' 'joined together under the authority of a religious leader' and 'dedicated to the performance of religious works.' Nor, contrary to Plaintiffs' suggestion, does it matter for purposes of coverage under the NYLL that male clergy members were paid while Plaintiffs were not […] whether Plaintiffs were paid or not does not change the fact that they were 'permitted to work ... as ... members of a religious order' and, thus, were not covered by the NYLL at all. Accordingly, Plaintiffs' NYLL claims must be and are dismissed."

*Id.* at *8 (internal quotes and citations omitted).

The current matter should be dismissed along the same lines as *Brandenburg*. First, Reverend Frazier cannot seriously dispute, nor does she, that the Church is a religious order. Similarly, it is clear from her own allegations that she was an ordained minister, and her role within the Church as Associate Pastor involved preaching, performing baptisms and communions, and providing pastoral care and counseling, and she was therefore "dedicated to the performance religious works." Complaint ¶ 43. *See also*, Reverend Frazier's "Job Description" annexed to the Walrond Aff. as **Exhibit "2."**

As such, it is clear that Plaintiff was "permitted to work as a member of a group of persons, joined together under the authority of a religious leader and dedicated to the performance of religious works." *Id.* at *8. N.Y. Lab. Law § 651. Accordingly, pursuant to the NYLL's own plain language, Plaintiff must be excluded from the definition of an "employee" and her claims for unpaid wages and wage notice violations pursuant to the NYLL are simply without merit. The Complaint should therefore be dismissed in its entirety, with prejudice.

## POINT II

## EVEN IF THE NYLL DID APPLY TO REVEREND FRAZIER, SHE WOULD STILL BE CONSIDERED AN EXEMPT PROFESSIONAL AND NOT ENTITLED TO ANY ADDITIONAL WAGES

"Like the FLSA, the NYLL imposes a requirement that employers pay time-and-a-half for work done in excess of forty hours per week. Similarly, there is an exception for employees working in a bona fide professional capacity. Unlike the FLSA, however, employers claiming a professional exemption under the NYLL need not satisfy a salary test, only a duties test. Because the parties do not dispute that [registered nurses] such as [plaintiff] meet the duties test, and this is the only requirement for the professional exemption under the NYLL, [plaintiff] is exempt from the NYLL overtime compensation requirements, and her state law claim for overtime compensation must be dismissed." *Davis v. Lenox Hill Hosp.*, No. 03 CIV.3746 DLC, 2004 WL 1926087, at *5 (S.D.N.Y. Aug. 31, 2004).

With respect to the duties test under the NYLL, the NYDOL has issued guidance indicating that the professional exemption will apply if: 1) "The employee's primary duty consists of the performance of work that requires knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education, an apprenticeship, [or] training in the performance of routine mental, manual, or physical processes;" and 2) "The employee's work requires the consistent exercise of discretion and judgment in its performance, is predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical or physical work), [and] is of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time." *See*, the NYDOL "Professional Employee

Overtime Exemption Frequently Asked Questions (FAQ)," annexed to the Byrnes Aff. as **Exhibit "B."**

Notably, the NYLL professional exemption covers a wide range of occupations. With respect to religious organizations, as argued above, it must be noted that ministers and members of religious organizations are excluded from the definition of "employee" under the NYLL in the first place. But even beyond this, the NYDOL has specifically indicated that "theology" meets the definition of a "field of science or learning" as required by the duties test. *Id.*

Based on this, is clear from Reverend Frazier's own pleadings that she meets all of the required elements of the duties test, and the professional exemption should apply. To begin with, she concedes that she has a Master of Divinity degree from Emory University School of Theology. Complaint ¶ 25. By her own admission, therefore, she clearly meets the "field of science and learning" element of the test. Additionally, she explains that her primary responsibilities included attending church and preaching to the congregation multiple times a month, teaching bible studies multiple times a month, and teaching a spiritual formation class every semester, and otherwise preparing for the teaching, training, and preaching she did at the Church. Complaint ¶ 43. Based on her own allegations, therefore, it is clear that Reverend Frazier's work involved the "exercise of discretion and judgment in its performance," was "predominantly intellectual and varied in character (as opposed to routine mental, manual, mechanical or physical work)," and was "of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time."

Consequently, even if the NYLL did somehow apply to Reverend Frazier, it seems clear from her own pleadings that she would nonetheless be considered an exempt professional. As a result, she is not now, nor has she ever been, entitled to additional pay of any kind. Rather, her

Associate Pastor salary would have covered all of the hours she worked for the Church, including any time she alleges to have spent providing pastoral services through the HOPE Center program.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in its entirety, with prejudice, and grant Defendants such other and further relief as may be deemed just and proper.

Dated: Woodbury, New York
       October 6, 2022

                                  MILBER MAKRIS PLOUSADIS
                                  & SEIDEN, LLP

                                  _____
                                  John J. Byrnes, Esq. (JJB1277)
                                  Attorneys for Defendants
                                  1000 Woodbury Road, Suite 402
                                  Woodbury, New York 11797
                                  (516) 712-4000
                                  Our File No.: 420-19501