```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/17/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
:
KYNDRA FRAZIER,                                                    :
                                                                   :
                          Plaintiff,                               :
                                                                   :       22-cv-5270 (LJL)
        -v-                                                        :
                                                                   :       OPINION AND ORDER
FCBC COMMUNITY DEVELOPMENT                                         :
CORPORATION and MICHAEL WALROND,                                   :
                                                                   :
                          Defendants.                              :
                                                                   :
-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants FCBC Community Development Corporation ("FCBC") and Michael Walrond ("Walrond," and collectively with FCBC, "Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint of Plaintiff Kyndra Frazier ("Plaintiff") against them for failure to state a claim for relief.  Dkt. No. 14.

For the following reasons, the motion to dismiss is denied.

## BACKGROUND

The Court accepts the well-pleaded allegations of the complaint as true for purposes of this motion.[1]

FCBC is a charitable non-profit corporation organized and existing under the laws of the State of New York that develops affordable housing and educational programs in Harlem, New

---

[1] Defendants have submitted an affidavit from Walrond.  Dkt. No. 15-1.  That affidavit is not cognizable on this motion to dismiss because its assertions rely on submissions and facts external to the complaint.  This Court declines to exercise its discretion to convert the motion to one for summary judgment under Federal Rule of Civil Procedure 56.  *See Cano v. Sushi Chain, Inc.*, 2021 WL 84276, at *5 (E.D.N.Y. Jan. 11, 2021).

York.  Dkt. No. 1 ¶¶ 1, 12.  Walrond is the Board President of FCBC.  *Id.* ¶ 15.  Since at least 2012, when he first met Plaintiff, Walrond also has been the Senior Pastor of the First Corinthian Baptist Church (the "Church"), which has a relationship with FCBC not described in the complaint.  *Id.* ¶¶ 10, 21.  FCBC runs a mental health facility in New York City called the Healing on Purpose and Evolving Center (the "HOPE Center").  *Id.* ¶¶ 1, 9.

Plaintiff is the former Executive Director of the HOPE Center and the former Associate Pastor of Pastoral Care and Counseling at the Church.  *Id.* ¶¶ 1, 27.  She holds a Master of Divinity degree from Emory University School of Theology and a Master of Science degree from Columbia University School of Social Work and is licensed by New York State as a qualified Master Social Worker.  *Id.* ¶ 25.  Her association with the Church and with Walrond began in 2012, when she joined the Church while attending Columbia University.  *Id.* ¶ 20.  In May 2014, after Plaintiff moved to Atlanta, Georgia, Walrond asked her if she would be interested in helping him establish a branch of the Church in Atlanta and, although that plan never came to fruition, the two stayed connected.  *Id.* ¶ 22.

In the spring of 2016, Walrond convinced Plaintiff to move back to New York City by extending an offer to her to become an Associate Pastor at the Church.  *Id.* ¶ 23.  She moved back to New York City in October 2016 and began working as an Associate Pastor at the Church on November 1, 2016, receiving an annual salary from the Church of $60,000 and an annual housing stipend of $15,600.  *Id.* ¶¶ 26–28.  She was paid that same rate throughout her employment with the Church.  *Id.* ¶ 28.

At the same time, Walrond told Plaintiff he wanted to develop a separate mental health facility to serve Harlem residents and wanted Plaintiff to lead the facility.  *Id.* ¶ 24.  Plaintiff alleges that Walrond hired her as the Executive Director of the HOPE Center in or around

November 2016, although she admits that she never received an offer letter for the Executive Director position. *Id.* ¶¶ 30–31. Plaintiff's offer letter from the Church did not include any reference to the Corporation or the HOPE Center. *Id.* ¶ 29. Plaintiff claims that Walrond verbally assured her that she would be paid an additional salary, on top of the pastoral salary she received from the Church, after she successfully submitted grants for the HOPE Center. *Id.* ¶ 39.

Plaintiff worked for both the Church and the HOPE Center from November 2016 to June 2, 2020. *Id.* ¶ 42. She worked at the Church on weeknights and weekends. *Id.* ¶ 43. She was responsible for attending music department rehearsals and conducting multiple hours of training on trauma-informed congregational care on Saturdays; she also worked at the Church every Sunday, attending church and preaching to the congregation multiple times a month. *Id.* Plaintiff worked from her office at the HOPE Center from Tuesday to Friday 11 a.m. to 7 p.m. and on Saturdays from 11 a.m. to 3 or 4 p.m., spending at least 36 hours per week solely on work for the HOPE Center. *Id.* ¶ 44. Plaintiff's responsibilities as the Executive Director of the HOPE Center included creating relationships with schools to host social work students, supervising social work students' clinical work, creating a relationship with Columbia University's Department of Psychiatry, managing relationships to offer free psychiatric evaluations and referrals for medication management for HOPE Center clients, working on grant proposals to strengthen the HOPE Center's services, attending HOPE Center staff meetings, and leading grief groups and mental health first aid trainings in conjunction with Columbia University. *Id.* ¶ 45. She also wrote the 2019 HOPE Center Annual Report, where she is listed as the Executive Director. *Id.* ¶ 50. As part of her role as Executive Director, she also applied for grants and opportunities on behalf of the HOPE Center that would not have been available to the Church because of its status as a religious organization. *Id.* ¶ 46. Between the two jobs,

Plaintiff worked up to eighty hours a week from November 2016 until her termination on June 2, 2020.  *Id.* ¶ 42.

Plaintiff alleges that FCBC and the Church are separate and distinct organizations, with separate organizational documents filed with New York State and separate Form 990s filed with the federal government.  *Id.* ¶ 32.  FCBC and the Church operate out of separate addresses.  *Id.* ¶ 33.  The HOPE Center is an initiative of FCBC and has its own staff; none of the current staff members of the HOPE Center, including the Executive Director, are currently employed by the Church.  *Id.* ¶ 34.  The HOPE Center receives its funding through FCBC.  *Id.* ¶ 13.  FCBC files its own tax returns stating that it is a non-profit organization, not a religious organization, and that it is not affiliated with any other organizations.  *Id.* ¶¶ 35–36.

Plaintiff alleges that she was employed by FCBC and that FCBC hired her and controlled her work schedule and employment conditions, determined her payment rate and method, held her out as the Executive Director of the HOPE Center, and kept at least some records regarding her employment.  *Id.* ¶¶ 14, 18.  She claims, however, that FCBC failed to pay her any wages throughout the entirety of the time she was employed by FCBC or for her work for the HOPE Center.  *Id.* ¶¶ 2, 48.

On June 2, 2020, after having raised complaints to Walrond about how he was running the Church, Plaintiff was abruptly terminated from her employment at the Church as well as her employment at the HOPE Center.  *Id.* ¶ 51.  The termination letter was on Church letterhead and stated that her employment with both the Church and HOPE Center was terminated.  *Id.* ¶ 52.

## PROCEDURAL HISTORY

Plaintiff instituted this action by complaint filed on June 23, 2022.  Dkt. No. 1.  She alleges three claims under the New York Labor Law ("NYLL"): (1) failure to pay her minimum wages (or any wages at all) for all hours worked for FCBC, *id.* ¶¶ 53–58; (2) failure to provide

4

her a proper wage statement as required by NYLL Article 6, § 195(3), *id.* ¶¶ 59–62; and (3) failure to provide her wage notices required by the NYLL Article 6, §§ 191, 195, *id.* ¶¶ 63–66.[2]

Defendants filed this motion to dismiss along with an affirmation and a memorandum of law on October 6, 2022.  Dkt. Nos. 14–16.  Plaintiff filed a memorandum of law in opposition to the motion on November 30, 2022, Dkt. No. 24, and Defendants filed a reply memorandum of law in further support of the motion on February 24, 2023, Dkt. No. 31.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal.  *Twombly*, 550 U.S. at 555, 557.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]."  *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

---

[2] Plaintiff invokes diversity jurisdiction under 28 U.S.C. §1332.  *Id.* ¶ 6.

## DISCUSSION

Defendants argue that Plaintiff fails to state a claim for relief under the NYLL. Defendants first argue that Plaintiff does not qualify as an "employee" under the NYLL because she was employed as a member of a religious order. To recover under the NYLL, plaintiffs must plead that they were employees within the meaning of the NYLL. *See Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 34 (E.D.N.Y. 2015). Section 651(5) of the NYLL provides that an employee "shall not include any individual who is employed or permitted to work . . . (f) as a member of a religious order, or as a duly ordained, commissioned or licensed minister, priest or rabbi, or as a sexton, or as a christian science reader." NYLL § 651(5). The New York Department of Labor has interpreted the term "religious order" to mean "a group of persons who are joined together under the authority of a religious leader, and are dedicated to the performance of religious works." 12 N.Y.C.R.R. § 142-3.12(c)(8).

Plaintiff does not dispute that, if she made her allegations against the Church and in her capacity as an Associate Pastor, she would have no claim under the NYLL. The parties do not dispute that the Church is a "religious order" and that, as an Associate Pastor, Plaintiff would be considered to be a "member of a religious order." Plaintiff would thus have no right either to a minimum wage or to a wage notice or a wage statement under the NYLL. *See Brandenburg v. Greek Orthodox Archdiocese of N. Am.*, 2021 WL 2206486, at *8 (S.D.N.Y. June 1, 2021) ("Plaintiffs . . . were 'permitted to work . . . as . . . member[s] of a religious order' and, thus, were not covered by the NYLL at all." (citing NYLL § 651(5)(f))).

Plaintiff, however, does not assert claims against the Church or in her capacity as an Associate Pastor. She alleges that Walrond wore two hats—as Pastor of the Church and as board president of FCBC, Dkt. No. 1 ¶¶ 15, 21—and that, in his latter capacity, he hired Plaintiff to work for FCBC as Executive Director of the Hope Center, *id.* ¶¶ 30–31. Plaintiff similarly

6

claims that she also wore two hats—namely, that she was employed by FCBC as an "Executive Director," for the Hope Center, *id.* ¶¶ 30, 50, and also as an "Associate Pastor" at the Church, *id.* ¶ 26. She further alleges that her offer letter from the Church did not include any reference to Defendant Corporation or the HOPE Center. *Id.* ¶ 29. Plaintiff contends that her employment for FCBC was not as a member of a religious order. She generally claims that she performed a variety of non-pastoral duties as a social worker for a mental health facility, *id.* ¶ 45, including applying for grants that would otherwise not have been available to the Church because of its status as a religious organization, *id.* ¶ 46. That facility was run by a non-profit and non-religious organization, as self-identified within its tax forms. *Id.* ¶ 35. None of the current staff members of the HOPE Center, including the Executive Director, are currently employed by the Church. *Id.* ¶ 34. She alleges that FCBC enjoyed a separate legal existence and enjoyed its own separate identity from the Church, as shown by tax filings and separate addresses. *Id.* ¶¶ 32, 33.

In response, Defendants argue that an employment relationship with FCBC "never existed in the first place" and that the absence of employment documentation proves that there was never "an employment relationship." Dkt. No. 31 at 2.[3] Defendants assert in Walrond's Affidavit, attached to their motion, that Plaintiff's role as Associate Pastor included providing pastoral counseling through the Hope Center. Dkt. No. 15-1 ¶ 4. In short, there was no separate job; it was the same job. But that argument relies on facts outside the complaint. It challenges

---

[3] Defendants also argue in their reply brief that no employment relationship existed because Plaintiff pleads that Walrond promised Plaintiff that she would be paid an additional salary "after she successfully submitted grants for the HOPE Center," Dkt. No. 1 ¶ 39, and alleges that the grant request included a requested salary for her of $120,000, *id.* ¶ 47, but she fails to allege that any such grant funds were ever awarded, Dkt. No. 31 at 3. But when the facts alleged in the complaint are construed in favor of Plaintiff, as this Court must do, Plaintiff adequately pleads that she was employed by FCBC as Executive Director of the Hope Center after she submitted the grant for the Hope Center. Whether the facts bear out that an employment relationship existed between FCBC and Plaintiff will have to await discovery.

7

the veracity of Plaintiff's allegations, which must be taken as true on this motion. Plaintiff alleges that Defendants hired her in their capacity with FCBC and verbally assured her an additional salary in her capacity as an employee of FCBC. Dkt. No. 1 ¶ 39. It is black letter law in New York that an employment relationship need not be documented in writing. It can be oral and at will. *See, e.g., Weiner v. McGraw-Hill, Inc.*, 443 N.E.2d 441, 443–44 (N.Y. 1982). That Plaintiff included, as a line item in her grant applications, a salary distinct from her salary as an Associate Pastor, further corroborates her allegation of an agreement for employment. Dkt. No. 1 ¶ 47. Accordingly, Plaintiff has pleaded enough to make it plausible that she was an employee within the meaning of the NYLL.

Defendants next argue that, even if Plaintiff is considered an employee under the NYLL, she is exempt from the wage provisions of that law under the exemption for persons working in a professional capacity. Dkt. No. 16 at 7–9. The NYLL exempts employees working in a bona fide professional capacity from the overtime pay requirements of state law. The professional employee exemption applies if the employee's primary duty consists of the performance of work that "[r]equires knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study . . . [and] [t]he employee's work . . . requires the consistent exercise of discretion and judgment in its performance[,] is predominantly intellectual and varied in character . . . [and] [i]s of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time." Dkt. No. 15-5 (underlining omitted). Theology is considered a "field of science or learning." *Id.* at 3.

Defendants' argument for the applicability of this exemption is premised on the assumption that her primary duties as an employee required her theological training and involved

attending Church and preaching, teaching bible studies, teaching a spiritual formation class every semester, and "otherwise preparing for the teaching, training, and preaching she did at the Church." Dkt. No. 16 at 8. Those arguments might suffice if Plaintiff was seeking overtime wages for her work as Associate Pastor. But, taking her allegations as true, she is claiming a failure to pay minimum wages by an employer other than the Church for separate employment that did not require her theological training or involve attending church and preaching. Accordingly, this argument also does not provide a basis for dismissal on the pleadings.

## CONCLUSION

The motion to dismiss is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 14.


SO ORDERED.

Dated: April 17, 2023
      New York, New York

                                       LEWIS J. LIMAN
                                       United States District Judge