UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KYNDRA FRAZIER,<br><br>                              Plaintiff,<br><br>   -against-<br><br>FCBC COMMUNITY DEVELOPMENT CORP., et al.,<br><br>                              Defendants. | 22-cv-5270 (AS)<br><br>MEMORANDUM OPINION<br>AND ORDER |

ARUN SUBRAMANIAN, United States District Judge.

## BACKGROUND

The following facts are undisputed, unless noted otherwise.

Plaintiff Kyndra Frazier met Defendant Michael Walrond more than ten years ago. Dkt. 57 ¶ 5. Walrond is a pastor at Defendant First Corinthians Baptist Church in Harlem, and Frazier was attending a service there. *Id.* Frazier expressed interest in serving in the ministry, but it wasn't until several years later that she moved back to Harlem and took a job at the church. *Id.* ¶¶ 8–11. She was hired as "Associate Pastor of Pastoral Care and Counseling." *Id.* ¶ 16.

As Frazier frames it, the job really ended up being two jobs. While she was working one job as a pastor, she was hired for another job as the executive director of the mental-health clinic that would become the HOPE (Healing on Purpose and Evolving) Center. *Id.* ¶ 17. The HOPE Center was associated with the church, but had its own building, staff, and legal status, and it served the whole Harlem community, not just churchgoers. *Id.* ¶¶ 18–22, 31. As "executive director," Frazier managed day-to-day operations but continued to meet with clients as a therapist. *Id.* ¶¶ 17, 21, 26.

Frazier argues that she was paid for just her role as associate pastor, not her role as executive director. Because she wore two hats, she says, she was entitled to two salaries. She says Defendants violated her rights under New York labor law by failing to (1) pay her a minimum wage for each job under N.Y. Lab. Law § 652, and (2) provide her wage notices and statements under N.Y. Lab. Law § 195. Defendants now move for summary judgment, arguing that Frazier was exempt from New York's minimum-wage law and that she lacks standing for the wage-notice and -statement claims. For the reasons below, Defendants' motion for summary judgment is DENIED.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). And a fact is "material" if it could "affect the outcome." *Id.* at 248. The Court views the record "in the light most favorable to the non-movant." *Williams*

*v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–26 (1986).

## DISCUSSION

### I. The parties genuinely dispute whether the jobs were separate and whether New York labor law's exemptions apply

New York labor law guarantees a minimum wage to all "employees." N.Y. Lab. Law § 652. But "employee" is defined to exclude a number of jobs. § 651(5). Among those excluded are "member[s] of a religious order" and those employed "in a *bona fide* executive, administrative, or professional capacity." § 651(5)(b), (f).

In the Court's motion-to-dismiss opinion, it noted that Frazier "d[id] not dispute that, if she made her allegations against the Church and in her capacity as an Associate Pastor, she would have no claim under the NYLL. The parties do not dispute that the Church is a 'religious order' and that, as an Associate Pastor, Plaintiff would be considered to be a 'member of a religious order.' Plaintiff would thus have no right … to a minimum wage." Dkt. 35 at 6.

On this motion, Defendants argue that Frazier's role as executive director of the Hope Clinic was exempt either as an "executive" or "professional" role. But to be an "executive" under New York regulations, the employee must be paid "a salary … not less than" certain specified amounts. N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4)(i)(*e*) (2020). If Frazier is right that she was paid nothing as executive director, this exemption wouldn't apply.

But the professional exemption conspicuously lacks a salary requirement. *Id.* § 142-2.14(c)(4)(iii). "[E]mployers claiming a professional exemption under the NYLL need not satisfy a 'salary' test, only a duties test." *Davis v. Lenox Hill Hosp.*, 2004 WL 1926087, at *5 (S.D.N.Y. Aug. 31, 2004) (cleaned up). So even if Frazier was paid nothing for her executive-director role, she could still qualify for the professional exemption if her job duties fit.

Those duties qualify for the exemption if they require (1) "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study" and either (2) "consistent exercise of discretion and judgment" or (3) the "work is predominantly intellectual and varied" and "the output … cannot be standardized in relation to a given period of time." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4)(iii).

Based on the undisputed facts, Frazier's executive-director role seemed to include many "professional" duties: She had multiple professional degrees, which she used in the job. She counseled individual patients and groups, and she had the required license to do so. Indeed, she even published an academic article about her work in a psychiatric journal. Dkt. 50-1 at 25:20–27:12, 62:11–19, 63:2–14, 102:7–21, 73:8–21, 75:2–76:13. These tasks suggest that she did the typical intellectual work of psychiatric counseling.

But to qualify for the professional exemption, her professional duties must have been her "primary duty." § 142-2.14(c)(4)(iii). Isolating an employee's primary duty is a "highly fact-intensive inquiry." *Clougher v. Home Depot U.S.A., Inc.*, 696 F. Supp. 2d 285, 290 (E.D.N.Y. 2010). And identifying an employee's primary duty matters because the exemptions are designed to capture different groups of employees. While the executive exemption covers those who make decisions "that guide or alter the course of business," the professional exemption covers those who make decisions reflecting the knowledge and training of "that particular profession." *See Pippins v. KPMG, LLP*, 759 F.3d 235, 247 (2d Cir. 2014); *cf.* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122-01, 22131 ("[A]n employee can only have one primary duty."); *Clougher*, 696 F. Supp. 2d at 289 n.5 (collecting cases for proposition that New York's law "mirror[s] and/or expressly adopt[s] federal wage law," so it is evaluated "by reference to the Fair Labor Standards Act … and its attendant regulations"). And as Defendants admit, the exemption is an affirmative defense, so they bear the burden of showing that it applies. Dkt. 51 at 13 (citing *Isett v. Aetna Life Ins. Co.*, 947 F.3d 122, 128 (2d Cir. 2020)).

Yet a genuine dispute remains over what Frazier's primary duty was. Even Defendants seem unsure, arguing that she falls under both the professional and executive exemptions. On top of her "professional" counseling, Frazier also did typical "executive" work. She says she essentially built the HOPE Center from the ground up, oversaw several interns and other therapists, made hiring and firing decisions, applied for grants, and, as Defendants put it, "manag[ed] and direct[ed] the daily activities of the HOPE Center." Dkt. 50-1 at 54:19–55:11, 69:6–13, 70:6–24, 97:7–12, 86:24–87:8, 91:16–25, 92:2–95:3; Dkt. 51 at 11; *see also Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982) ("[O]ne can still be 'managing' if one is in charge, even while physically doing something else."). While it might be counter-intuitive to think of these managerial tasks as not being "professional," New York's labor law circumscribes the exemption for professionals to those who, as their primary duty, apply "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4)(iii)(*a*).

Whether Frazier's job at the HOPE Center was primarily executive or professional is unclear. To answer that question, one must define Frazier's primary duty. Defendants have not attempted to do so, let alone presented evidence on that issue. The only evidence on this question is an "Award Budget Justification" email from Frazier herself. Dkt. 55-1. Even if admissible, this email does not settle the question. It is a snapshot in time, describes Frazier's tasks only superficially, and lists only the hours associated with tasks rather than their significance. *See Donovan*, 672 F.2d at 226 (noting that hours alone are not conclusive). Plus, neither side has categorized the tasks described as executive or professional. So a genuine factual dispute remains over whether Frazier's primary duty was professional and thus exempt.

Genuine disputes also remain over whether her executive-director and associate-pastor roles were distinct. (Recall that if she worked only as an associate pastor, she would be exempt.) True,

there is evidence that the two jobs were really one: she used just one office, Frazier and Walrond discussed Walrond's "vision to have a mental health center" before she was hired, and Frazier said she started working on the HOPE Center on "day one." Dkt. 50-1 at 50:16–18, 40:5–7, 55:7–8.

But Frazier has also presented evidence that her HOPE Center job was separate: the HOPE Center was legally separate from the church, she never saw counseling clients at the church, her associate-pastor offer letter did not mention setting up and running a mental-health clinic, and after she was fired, someone unaffiliated with the church was hired to run the HOPE Center. *See* Dkt. 55-2 to -4; Dkt. 50-1 at 57:13–22; Dkt. 50-4 to -5.

Finally, although proving that the jobs were separate is Frazier's burden, Defendants barely touch this issue in their brief on this motion. It is mentioned only in the facts section; it's not part of their legal argument. Indeed, they don't even address whether Frazier has evidence that she entered a separate, informal employment agreement with Walrond or the church. So they have not exactly put Frazier to her proof. As such, genuine disputes remain over whether (1) Frazier had one job or two and (2) her second job was covered by New York's minimum-wage law.

## II.   Frazier has standing for her wage-statement and -notice claims

Defendants also seek summary judgment against Frazier's wage-statement and -notice claims on the ground that she lacks standing. To have standing, Frazier must allege more than a statutory violation; that violation must have injured her. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). Frazier says she was injured: if she had gotten wage statements and notices, she would have been able to advocate for what "she was owed for her work in each role." Dkt. 47 at 2.

Defendants argue that they gave her a wage notice: her offer letter says she'd be paid $60,000. Dkt. 50-4. But Defendants again fail to grapple with Frazier's two-job argument. The offer letter was only for her role as associate pastor. Frazier's argument is that she should have gotten another wage notice and subsequent wage statements for her job as executive director of the HOPE Center. According to Frazier, those notices and statements would have shown a $0 salary, and then she would have been able to push for a higher salary. *See* Dkt. 47 at 2–3. And given her experience advocating for raises, there is at least some evidence that she would have pushed for a meaningful salary. Dkt. 50-1 at 91:16–25; Dkt. 55-1. Being deprived of that economic opportunity was an injury. *See Mantena v. Johnson*, 809 F.3d 721, 731 (2d Cir. 2015); *see also CC Distribs., Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989) ("[A] plaintiff suffers a constitutionally cognizable injury by the loss of an opportunity to pursue a benefit … even though the plaintiff may not be able to show that it was certain to receive that benefit had it been accorded the lost opportunity." (emphasis omitted)).

## CONCLUSION

For these reasons, the motion for summary judgment is DENIED. The Clerk of Court is directed to close ECF 49. The parties shall appear for the final pretrial conference on February 5, 2024, at 10:30 a.m.

SO ORDERED.

Dated: December 12, 2023
New York, New York

ARUN SUBRAMANIAN
United States District Judge