UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KYNDRA FRAZIER,

                                 Plaintiff,

      -against-

FCBC COMMUNITY DEVELOPMENT
CORPORATION and MICHAEL WALROND,

                                Defendants.
------------------------------------------------------------------------X

Case No.: 22-cv-05270


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION PURSUANT TO RULE 50(B) AND RULE 59**

                                      MILBER MAKRIS PLOUSADIS
                                         &SEIDEN, LLP
                                      John J. Byrnes, Esq. (JJB 5471016)
                                      Attorneys for Defendants
                                      1000 Woodbury Road, Suite 402
                                      Woodbury, New York 11797
                                      (516) 712-4000
                                      Our File No.: 420-23791
                                      Jbyrnes@milbermakris.com

## PRELIMINARY STATEMENT

On February 22, 2024, the Jury returned a verdict in favor of Plaintiff, Kyndra Frazier. *See* "Verdict Form," annexed to the Declaration of John J. Byrnes as **Exhibit "A"** (Docket Entry # 96). Specifically, in response to question one the Jury found the Plaintiff proved, by a preponderance of the evidence, that her work as Executive Director of the HOPE Center constituted "a separate and distinct form of employment" from her role as Associate Pastor of Pastoral Care and Counseling ("Associate Pastor") for the First Corinthian Baptist Church (the "Church"), which is not a party to this action.

The Jury found further, in response to question two, that Defendant FCBC Community Development Corporation ("CDC") was Plaintiff's employer for her work at the HOPE Center. Finally, in response to question three, the Jury found that Plaintiff worked 1,040 total hours for Defendant CDC. On March 29, 2024, the Court entered the Final Judgment in this matter along with an Opinion and Order regarding how the final amount of damages was calculated based on the Jury's verdict. *See* "Opinion and Order," annexed to the Declaration of John J. Byrnes as **Exhibit "B"** (Docket Entry # 104).

Defendant now moves, pursuant to Rule 50(b), for an entry of judgment as a matter of law as to questions one, two, and three. In the alternative Defendant moves for a new trial pursuant to Rule 59. Defendant's motion should be granted because Plaintiff failed, as a matter of law, to prove in response to threshold question one that, by a preponderance of the evidence, her work as Executive Director of the HOPE Center constituted a separate and distinct job from her employment as Associate Pastor. Additionally, as Plaintiff failed to meet her burden with respect to this threshold question one, the Jury's findings with respect to questions two and three are rendered moot.

ARGUMENT

POINT I

**LEGAL STANDARD FOR POST-TRIAL
MOTIONS PURSUANT TO RULE 50(b)**

Under Rule 50(b), a party who previously moved for and was denied a motion for a judgment as a matter of law, may renew the motion after a judgment is entered against them. *Cruz v. Local Union No. 3 of the Int'l Board. of Elec. Workers*, 34 F.3d 1148, 1155 (2d Cir. 1994). See "Trial Transcript," P. 234 - 236, containing Defendant's initial motion for judgment as a matter of law under Rule 50 (a) presented at the close of evidence. Rule 50(b) permits the trial court "a last chance to order the judgment that the law requires." *9 Wright & Miller Federal Practice and Procedure: Civil § 2521 at 537* (1971 ed.). A court may set aside a verdict where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on the issue[.]" *See Drake v. Delta Air Lines, Inc.*, 2005 U.S. Dist. LEXIS 14789, *3 (E.D.N.Y. July 21, 2005); *see also Levitant v. City of New York Human Res. Admin.*, 914 F. Supp. 2d 281 (E.D.N.Y. 2012).

Such a judgment is based on all the evidence in the record taken as a whole, viewed in the light most favorable to the non-movant, without making credibility determinations or weighing the evidence. *See DiBella v. Hopkins*, 403 F.3d 102, 116 (2d Cir. N.Y. 2005); *Jund v. Town of Hempstead*, 941 F.2d 1271, 1290 (2d Cir. 1991). "A district court may set aside a verdict only where '(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him.'" *See DiBella*, 403 F.3d at 116, *citing Mattivi v. South African Marine Corp.*, "Huguenot," 618 F.2d 163, 168 (2d Cir. 1980); *see also generally Stevens v. Rite Aid*, 851 F. 3d 224 (2d Cir. 2016).

Although the Court "cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury," *Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001), this motion should be granted where the Court can conclude that, "with credibility assessments made against the moving party and all inferences drawn against the moving party, a reasonable juror would have been compelled to accept the view of the moving party." *See Piesco v. Koch*, 12 F.3d 332, 343 (2d Cir. 1993). However, even under this standard, Plaintiff's claims must be dismissed.

## POINT II

### PLAINTIFF FAILED TO ESTABLISH BY A PREPONDERANCE OF THE EVIDENCE THAT HER WORK FOR THE HOPE CENTER WAS SEPARATE AND DISTINCT EMPLOYMENT FROM HER ROLE AS ASSOCIATE PASTOR

The joint employer doctrine applies where there is no single integrated enterprise, but where two employers handle certain aspects of their employer-employee relationship jointly. *Dacas v. Duhaney*, No. 17CIV3568EKVMS, 2022 WL 5422709, at *7 (E.D.N.Y. Aug. 11, 2022), report and recommendation adopted, No. 17-CV-3568(EK)(VMS), 2022 WL 4483188 (E.D.N.Y. Sept. 27, 2022). The "joint employer doctrine" treats employment by two or more employers as "one employment" for the purposes of evaluating wage-related issues. *New York v. Scalia*, 464 F. Supp. 3d 528, 535 (S.D.N.Y. 2020). Under the joint employer doctrine, it is well established that an employee may have more than one employer for a single job." *Lu Nan Fan v. Jenny & Richard's Inc.*, No. 17-CV-6963 (WFK), 2019 WL 1549033, at *6 (E.D.N.Y. Feb. 22, 2019) ("Indeed, like the FLSA, for purposes of the NYLL, an employee may have multiple employers."), *report and recommendation adopted*, No. 17-CV-6963 (WFK), 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019); s*ee Glatt v. Fox Searchlight Pictures Inc.*, 293 F.R.D. 516, 526 (S.D.N.Y. 2013).

In determining whether a separate or joint employment relationship exists, the analysis is generally the same under both the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). *Vargas v. Jet Peru-Courier Corp.*, No. 15-CV-6859 (RRM)(PK), 2018 WL 1545699, at *6 (E.D.N.Y. Mar. 14, 2018) ("[T]he analysis of the employment relationship under both statutes is based on the same factors."), *adopted*, 2018 WL 1545679 (E.D.N.Y. Mar. 28, 2018).

With respect to the current matter, therefore, in order to succeed on her claims, the threshold issue Plaintiff was required to prove by a preponderance of the evidence at trial was that the Defendant CDC and the Church were *separate and distinct* employers, for whom she held two separate and distinct jobs. Importantly, this required Plaintiff to prove *two* things. First, she had to prove that Defendant CDC was her employer with respect to the HOPE Center. Second, she had to prove that Defendant CDC's existence as her employer somehow *removed* the Church from this same role. **But Plaintiff failed to provide any evidence in support of this second issue.** Quite the opposite, Plaintiff admitted that for the duration of her employment and work at the HOPE Center, the Church continued to pay Plaintiff's salary, provide her with job benefits, and maintained control over her work.

The Second Circuit recognizes three general "control" tests, each of which may be used independently or in conjunction with the others, to determine the existence of an employment relationship and/or a joint employment relationship.

A) *Carter* **"Formal Control" Test.**

The Second Circuit has held that the four factors set forth in *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984), are helpful to an assessment of a putative employment relationship, based on a theory of formal control. *Dacas v. Duhaney*, No. 17CIV3568EKVMS,

2022 WL 5422709, at *8 (E.D.N.Y. Aug. 11, 2022), *report and recommendation adopted*, No. 17-CV-3568(EK)(VMS), 2022 WL 4483188 (E.D.N.Y. Sept. 27, 2022); s*ee Zhao v. Ke Zhang Inc.*, No. 18CV6452EKVMS, 2021 WL 1210369, at *4 (E.D.N.Y. Mar. 31, 2021). These factors are whether the alleged employer (1) had the power to hire and fire the employee, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *Id*.

With respect to the current matter, it is clear that all four prongs of this test are met by the Church, regardless of Defendant CDC's involvement as a joint employer. In fact, Plaintiff testified at trial that it was the Church that provided her with an offer letter and hired her (*see* "*Trial Transcript*," P. 46, 141, annexed to the Declaration of John J. Byrnes as **Exhibit "C"**; *see* "*Offer Letter*," annexed to the Declaration of John J. Byrnes as **Exhibit "D"**). It was the Church that provided her with a job description (*Trial Transcript*, P. 47; *see* "*Job Description*," annexed to the Declaration of John J. Byrnes as **Exhibit "E"**). The Church provided her with job benefits (*Trial Transcript*, P. 134, 141-143). The Church paid her salary at all times (*Trial Transcript*, P. 134). Moreover, the record is clear that Plaintiff testified that she never asked about a change in compensation when the HOPE Center was transferred to Defendant CDC, and even *after* the assignment, her duties did not change in any way, and her pay and benefits were still provided to her by the Church, directly through the Church's payroll. *Trial Transcript*, P. 149.

Plaintiff even testified directly that she understood the salary she received from the Church was specifically intended to compensate her for her work at the HOPE Center.

> "**[Defense Counsel] Q.** Now, you testified that you spent roughly 20 to 30 hours per week on your pastoral duties?
> **[Plaintiff] A.** Yes, sir.
> **Q.** That's a general number, correct?
> **A.** Yes, sir.

> **Q.** You're not saying or of the belief that your salary and your compensation was just for that 20 to 30 hours a week, correct?
> **A.** Correct.
> **Q.** You understand that the salary was intended to compensate you for your work at the HOPE center too, correct?
> **A.** Yes."

Trial Transcript, P. 149, Lines 13-24.

Even Plaintiff's termination letter for the HOPE Center was provided to her on Church letterhead. *See* "Termination Letter," annexed to the Declaration of John J. Byrnes as **Exhibit "F"**. As such, it is clear that the Carter factors for joint employment are met and, as a matter of law, Plaintiff failed to prove by a preponderance of the evidence that her work for the HOPE center was separate and distinct from her employment with the Church.

B) *Zheng* **"Functional Control" and Common Law "Control" Tests.**

In addition to these initial *Carter* factors, in *Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003), the Second Circuit set forth a six-factor test relevant to an assessment of a putative employment relationship on a theory of functional control. *See Zhao*, 2021 WL 1210369, at *4 (*citing Zheng*, 355 F.3d at 72). The functional control test is most relevant in the context of subcontractor relationships. Although typical outsourcing relationships are generally not indicative of joint employment, the Second Circuit has noted that Zheng contemplates arrangements under which the totality of circumstances demonstrate that workers formally employed by one entity operatively function as the joint employees of another entity, even if the arrangements were not purposely structured to avoid FLSA obligations. *Dacas*, 2022 WL 5422709, at *9.

The six *Zheng* factors are (1) whether the putative employer's premises and equipment were used for the plaintiff's work, (2) whether the entities or individuals that contracted work from the putative employer had a business that shifted from one putative joint employer to another, (3) the extent to which a plaintiff performed a discrete line-job that was integral to the putative joint

employer's process of production, (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes, (5) the degree to which the putative joint employer or its agents supervised the plaintiff's work, and (6) whether the plaintiff worked exclusively or predominantly for the putative joint employer. *See Zheng*, 355 F.3d at 72; *see Dacas*, 2022 WL 5422709, at *9.

Similarly, for the purposes of determining the existence of an employment relationship, the Second Circuit also often follows a set of non-exhaustive factors set forth by the Supreme Court that, when present, may indicate the existence of an employer-employee relationship under the common law. *Felder v. United States Tennis Ass'n*, 27 F.4th 834, 843–44 (2d Cir. 2022).

These factors include: 1) the hiring party's right to control the manner and means by which the product is accomplished; 2) the skill required; 3) the source of the instrumentalities and tools; 4) the location of the work; 5) the duration of the relationship between the parties; 6) whether the hiring party has the right to assign additional projects to the hired party; 7) the extent of the hired party's discretion over when and how long to work; 8) the method of payment; 9) the hired party's role in hiring and paying assistants; 10) whether the work is part of the regular business of the hiring party; 11) whether the hiring party is in the business; 12) the provision of employee benefits; and 13) the tax treatment of the hired party. *Id. See generally Restatement (Second) of Agency §* 220 (1958).

Broadly, these factors examine whether the alleged employer paid the employee's salary, hired and fired them, and had control over their daily employment activities." *Id*.; *see also Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 214 (3d Cir. 2015); *see Covington v. Int'l Ass'n of Approved Basketball Offs.*, 710 F.3d 114, 119 (3d Cir. 2013). The crux of these factors is the element of control. *Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 371 (2d Cir. 2006) ("…the

common-law element of control is the principal guidepost that should be followed…"); *see also Peppers v. Cobb Cnty.*, 835 F.3d 1289, 1297 (11th Cir. 2016) (considering "(1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment").

A joint employer relationship therefore exists when two or more entities, according to common law principles, share significant control of the same employee. *See*, *e.g.*, *Knitter v. Corvias Mil. Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014) (*quoting Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek*, 312 F.3d 1213, 1218 (10th Cir. 2002) ("Under the joint employer test, two entities are considered joint employer ... if they both 'exercise significant control over the same employees.' "); *Plaso v. IJKG, LLC*, 553 F. App'x 199, 204 (3d Cir. 2014) (*quoting Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997) ("[A] joint employment relationship exists when 'two entities exercise significant control over the same employees.' ").

This means that if an entity other than the employee's formal employer has the power to pay an employee's salary, hire, fire, or otherwise control the employee's daily employment activities, we may properly conclude that a constructive employer-employee relationship exists. *Felder*, at 844.

Additionally, because the exercise of control is the guiding indicator, factors indicating a joint-employment relationship may vary depending on the case, and any relevant factor may be considered so long as it is drawn from the common law of agency. In sum, all of the incidents of the relationship must be assessed and weighed with no one factor being decisive. *Id.* see also *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 324, (1992) (*quoting N.L.R.B. v. United Ins. Co. of Am.*, 390 U.S. 254, 257, (1968)).

Based on the factors of these two tests, it is clear that despite Defendant CDC's involvement, the Church retained both functional and common law control over Plaintiff's work at the HOPE Center. As such Plaintiff failed to prove that her work for the HOPE Center was separate and distinct from her employment with the Church.

Plaintiff admitted during trial that her work at the HOPE Center was discussed in conjunction with the initial discussions of her potential Associate Pastor job. *Trial Transcript*, P. 124. Moreover, these discussions happened before the Associate Pastor job offer was made to her. *Trial Transcript*, P. 125. Plaintiff even admitted that she was particularly well-suited for the Associate Pastor role, including the tasks she would be performing at the HOPE center, because of her dual master's degrees in divinity and social work. *Id*.

Plaintiff admitted that she accepted the job offer and the compensation package for the Associate Pastor without negotiation. *Trial Transcript*, P. 126-128. As noted above, she even directly admitted that the compensation that she received was for her work as a pastor and for her role at the HOPE center. *Trial Transcript*, P. 149, Lines 13-24. She also admitted that the HOPE center itself was a church initiative, and which was wholly funded by the church. *Trial Transcript*, P. 124, 148.

It was similarly established that the church held the lease for the HOPE center premises, and that all salaries relating to the HOPE center were paid by the church. *Trial Transcript*, P. 188, 208. It was established at trial that even after the HOPE center was assigned to the defendant's CDC, the HOPE center was continuously funded by the church. *Trial Transcript*, P. 208-209. Finally, Plaintiff admitted that the genesis of her claims was that she felt underpaid for the amount of work she was required to perform while working for the Church, not that she held two separate and distinct jobs. *Trial Transcript*, P. 111, Lines 5-11.

Based on the foregoing, the trial record is clear that the tasks Plaintiff performed at the HOPE center were fairly and foreseeably part of her duties as an Associate Pastor. In fact, they were exactly what she was asked to do by the Church, and the Church retained both functional and common law control over Plaintiff's employment. As such Plaintiff failed to prove by a preponderance of the evidence at trial that her work for the HOPE Center was separate and distinct from her employment with the Church.

## CONCLUSION

It is respectfully submitted that Defendants' motion for an entry of judgment as a matter of law pursuant to Rule 50(b) should be granted in favor of Defendant, and Plaintiff's claims dismissed in their entirety with prejudice. Alternatively, Defendants respectfully request that this Court grant a new trial based on these issues pursuant to Rule 59.

Dated: Woodbury, New York
      April 26, 2024

*John J. Byrnes*
JOHN J. BYRNES