UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KYNDRA FRAZIER,

                Plaintiff,

-against-

FCBC COMMUNITY DEVELOPMENT CORPORATION,

                Defendant.

22-cv-5270 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

## BACKGROUND

    Plaintiff Kyndra Frazier sued Defendant FCBC Community Development Corporation (FCBC CDC) under the New York Labor Law (NYLL) for failing to pay her a minimum wage or provide her a wage notice or statement. These claims are common, but the nature of the violation here was unusual. Most minimum-wage cases involve workers who say they had a job that didn't pay them enough. Here, Frazier said she had one job for which she was paid a salary and another job for which she wasn't paid at all: she was paid for her work as associate pastor at the First Corinthian Baptist Church, but, she argued, she was separately employed by FCBC CDC as executive director of the "HOPE Center" and wasn't paid for that job. FCBC CDC is a nonprofit affiliate of the church, but Frazier maintained that the jobs were separate.

    From February 20 to February 22, 2024, the Court held a jury trial. The first two questions on the verdict form asked the following:

1. Did Plaintiff Frazier prove, by a preponderance of the evidence, that her work as Executive Director of the HOPE Center constituted a separate and distinct form of employment (in other words, a separate job) from her role as Associate Pastor of Pastoral Care and Counseling?

2. Did Plaintiff Frazier prove, by a preponderance of the evidence, that her employer for her work at the HOPE Center was Defendant CDC?

Dkt. 96. Neither party objected to the verdict form other than a minor wording dispute, which has not been re-aired on this motion. *See* Tr. 260:2–9. The same goes for the jury instructions that addressed these questions. *See* Tr. 240:3–250:14, 263:3–8 (jury instruction 7); Tr. 250:13–252:9 (jury instruction 8).

    Before submitting the case to the jury, Defendant moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The motion addressed only the first question above (and the factors listed in its accompanying jury instruction):

> Your Honor, we, the defendant, believe that the plaintiff has failed to elicit evidence that establishes that the work at the HOPE center constituted a separate and distinct

> form of employment from her role as a PCC, which is the short name for the pastor role. She admitted during the trial that Pastor Mike spoke with her about the HOPE center before a job offer was made to her. She admitted that she was particularly well-suited for the role of PCC, including the task at the HOPE center because of her dual master's degrees in divinity and social work.
>
> She admitted that she accepted the job offer and the compensation package for the PCC without negotiation. She admitted that the compensation that she received was for her work as a pastor and for her role at the HOPE center. She also admitted that the church was a—I'm sorry, that the HOPE center was a church initiative, and which was wholly funded by the church. It was established that the church held the lease for the HOPE center premises, that all salaries relating to the HOPE center were paid by the church. That even after the HOPE center was assigned to the defendant's CDC, the HOPE center was continuously funded by the church. In essence, the plaintiff admitted that she was performing the task that she was asked to perform by Pastor Mike and the church, but she feels that she was simply undercompensated. When she was asked about the salary of the current executive director of the HOPE center Dr. Lina Green, the plaintiff said that she was joyful that Dr. Green was being compensated for the work that she was doing.
>
> Finally, she did not have a separate employment agreement, indicating that it was a separate job for the HOPE center tasks. The tasks that she performed at the HOPE center were fairly and foreseeably part of her duties as an associate pastor, because she knew that she would be doing work to develop the vision of Pastor Mike while she was at the HOPE center. The task[s] that she was performing were exactly what she was asked to do by Pastor Mike. They were exactly what she was asked to do by the church. And for that reason, and for all the foregoing reasons, it's respectfully submitted that the plaintiff has failed to meet her burden as a matter of law, and the complaint should be dismissed.

Tr. 234:14–236:3.

The Court reserved decision on the motion. *Id.* at 236:15–23. The jury returned a verdict, answering yes to both questions above. Dkt. 96. Defendant now renews its motion for judgment as a matter of law under Rule 50(b). Dkt. 111. In the alternative, it moves for a new trial under Rule 59. *Id.* Frazier has moved for attorneys' fees and costs under NYLL § 663(1). Dkt. 107.

## LEGAL STANDARDS

To grant a Rule 50 motion, "the Court must find that a reasonable jury would not have a legally sufficient evidentiary basis to find for the non-movant." *Perry v. City of New York*, 78 F.4th 502, 517 (2d Cir. 2023) (cleaned up). That is, the Court must deny the motion "unless there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Id.* (citation omitted). "The burden on the movant is particularly heavy where, as here, the jury has deliberated in the case and actually returned its verdict." *Id.* (internal quotation marks omitted).

2

In evaluating the Rule 50 motion, the Court "consider[s] the evidence in the light most favorable to the non-moving party and give[s] that party the benefit of all reasonable inferences that the jury might have drawn in that party's favor." *Id.* (cleaned up). "The court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury, and [it] must disregard all evidence favorable to the moving party that the jury is not required to believe." *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014) (internal quotation marks omitted).

Procedurally, the Rule 50(b) motion (made after trial) must more or less match the Rule 50(a) motion (made before submitting the case to the jury). "The principal purpose" of requiring that the motion be made before the verdict is "to assure the responding party an opportunity to cure any deficiency in that party's proof." *Lore v. City of Syracuse*, 670 F.3d 127, 152 (2d Cir. 2012). "To ensure that that opportunity is a fair one, Rule 50(a) also provides that the motion must specify the judgment sought and the law and facts that entitle the movant to the judgment. The specificity requirement is obligatory. A Rule 50(a) motion requesting judgment as a matter of law on one ground but omitting another is insufficient to preserve a JMOL [(judgment as a matter of law)] argument based on the latter." *Id.* (cleaned up). "As to any issue on which proper Rule 50 motions were not made, JMOL may not properly be granted by the district court … unless that action is required in order to prevent manifest injustice." *Id.* at 153. "Manifest injustice exists where a jury's verdict is wholly without legal support." *ING*, 757 F.3d at 97.

Under Rule 59, the Court "may grant a new trial for any reason for which a new trial has heretofore been granted in an action at law in federal court, including if the verdict is against the weight of the evidence. A decision is against the weight of the evidence if and only if the verdict is (1) seriously erroneous or (2) a miscarriage of justice." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417–18 (2d Cir. 2012) (cleaned up). For a Rule 59 motion, "the trial judge may weigh the evidence and the credibility of witnesses and need not view the evidence in the light most favorable to the verdict winner." *Id.* at 418. But the Court should rarely exercise this power when the verdict hinges on witness credibility. *Id.*

And the Court need not grant a new trial just because it disagrees with the jury's verdict. *See Bevevino v. Saydjari*, 574 F.2d 676, 685 (2d Cir. 1978). Instead, "[t]he trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise not." *Id.* at 684 (citation omitted). In a word, "the court should only grant such a motion when the jury's verdict is egregious." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) (internal quotation marks omitted).

Finally, under NYLL § 663(1), any employee who recovers in a wage-underpayment suit "shall recover … costs [and] all reasonable attorney's fees."

3

## DISCUSSION

### I. The Rule 50(b) motion is denied

#### A. Procedurally, the motion is improper

At the threshold, the Rule 50(b) motion is procedurally improper for two separate, related reasons. First, the Rule 50(b) motion addresses a different verdict-form question than the Rule 50(a) motion. As quoted above, Defendant's Rule 50(a) motion targeted question 1 on the verdict form: whether Frazier had separate jobs. Now, Defendant says that "Plaintiff was required to prove … that the Defendant [FCBC] CDC and the Church were separate and distinct employers, for whom she held two separate and distinct jobs." Dkt. 113 at 4 (emphasis omitted). And it argues that the church, not FCBC CDC, was Frazier's employer. *Id.* at 4–10. This argument plainly targets question 2 on the verdict form. It was not raised in the Rule 50(a) motion, so Frazier had no opportunity to supplement her proof before submitting the case to the jury. And this disconnect boxes Defendant in: it did not preserve the argument it now makes, and it now forfeits the argument it made.

Second, even if Defendant could shoehorn its basic argument into its Rule 50(a) motion, it has introduced a new legal basis on this motion. Its Rule 50(b) motion relies entirely on the joint-employer doctrine. Because the church and Defendant were joint employers, it says, Frazier's claim must fail. This doctrine was not discussed at any point during the trial, let alone as part of Defendant's Rule 50(a) motion. Nor was this application of the doctrine discussed at any point. Defendant points out that it mentioned the joint-employer doctrine as "the closest allegory [*sic*]" to this case in a pretrial letter to the Court. *See* Dkt. 121 at 2 (citing Dkt. 77). But mentioning it once in a letter is not the same as raising it under Rule 50(a). If anything, the letter shows that the issue was mentioned and then abandoned. This Rule 50(b) motion is not, as Defendant tries to frame it, simply providing "more detailed and precise legal analysis." Dkt. 124 at 1.

For both of these reasons, the motion is improper. So it may be granted only if it is necessary to prevent manifest injustice. As explained in the next section, Defendant's motion fails under the usual Rule 50 standard, so the heightened standard only confirms that conclusion.

The Court also notes another procedural deficiency. Defendant's reply brief casts doubt on the jury instructions, saying that jury instruction 7 "does not appear to have properly or fully conveyed the necessary elements of the tests underlying the joint employer doctrine." Dkt. 124 at 2. But again, this motion is not the right vehicle for that objection. "Rule 51 requires parties to articulate and lodge their objections to jury charges before they are delivered so that the trial court will have an opportunity to cure any defects in the instructions before sending the jury to deliberate." *ING*, 757 F.3d at 97 (internal quotation marks omitted). Defendant didn't make this objection during the charge conference, even as the Court and the parties went through the instructions paragraph by paragraph. Tr. 240:3–250:12.

Similarly, Defendant argues that Frazier "had to prove that Defendant [FCBC] CDC's existence as her employer somehow removed the Church from this same role." Dkt. 113 at 4. But this argument is essentially a late objection to the verdict form. If Defendant believed that Frazier had to prove something not on the verdict sheet, it needed to raise that issue before the jury returned a

4

verdict. *See* Tr. 264:5–23 (asking the parties whether "there any additional instructions or questions on the verdict form that either side believes need to be included"); Fed. R. Civ. P. 49(a)(3) ("A party waives the right to a jury trial on any issue of fact raised by the pleadings or evidence but not submitted to the jury unless, before the jury retires, the party demands its submission to the jury.").

### B. Substantively, the motion is nonsensical

#### 1. *The joint-employer doctrine*

Even considering the motion on the merits, it fails. Defendant spends most of its brief reciting the joint-employer factors. But it misses the point of the doctrine. It is a backup argument invoked by plaintiffs to hold *more* defendants liable. Consider this summary (although this summary deals with the federal Fair Labor Standards Act (FLSA), Defendant recognizes that the standard is the same under the FLSA and NYLL, Dkt. 113 at 4):

> [L]iability under the FLSA extends to any "employer." 29 U.S.C. § 216(b). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "An entity 'employs' an individual under the FLSA if it 'suffer[s] or permit[s]' that individual to work." *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 66 (2d Cir. 2003) (quoting 29 U.S.C. § 203(g))…. "The regulations promulgated under the FLSA expressly recognize that a worker may be employed by more than one entity at the same time." *Id.* at 66 (citing 29 C.F.R. § 791.2). As such, an entity that does not formally employ an individual may nevertheless be subject to joint and several liability under the FLSA as a "joint employer."

*Gordon v. Gen. Prop. Mgmt. Assocs., Inc.*, 496 F. Supp. 3d 830, 836–37 (S.D.N.Y. 2020) (some citations omitted).

Defendant's argument here seems to adopt at least three false premises: (1) that joint employment is the default, so it was Frazier's burden to disprove it, (2) that if the church and FCBC CDC were joint employers, Frazier couldn't recover from FCBC CDC, and (3) that Frazier needed to have two separate employers to have two separate jobs. Defendant cites no authority for any of these ideas. As shown above, the first two are simply wrong. And the third is illogical: The joint-employer doctrine says an employee can have two employers for one job. It has nothing to say about whether an employee can have two jobs with one employer (or, as Defendant seems to contend here, one employer for one job and that same employer plus another employer for a second job).

Even more to the point are the jury instructions. Defendant lists the various joint-employer factors while ignoring that the jury was instructed according to the more restrictive formal-control test. *Compare* Tr. 306:10–307:9, *with Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984); *see also* Tr. 250:13–251:18 (Defense counsel declining to object to instruction 8 other than a minor wording change that the Court granted). "Because [the formal-control test] defines employment more narrowly than [NYLL] requires, satisfying this test is sufficient, but not necessary,

5

to show joint employment." *Greenawalt v. AT&T Mobility LLC*, 642 F. App'x 36, 37 (2d Cir. 2016); *see also Zheng*, 355 F.3d at 79.

Even reading Defendant's motion (extremely charitably) to argue typical insufficiency of the evidence on verdict-form questions 1 and 2, the motion still fails. Stripping Defendant's brief and Rule 50(a) motion for parts, it points to the following evidence:

- The church (rather than FCBC CDC) gave Frazier her offer letter, job description, benefits, salary, and termination letter.[1]

- Frazier didn't negotiate before taking the church's job offer, didn't ask for a raise, her duties never changed, her dual degrees made her well-suited for both jobs from the beginning, and she admitted that she understood that her church salary was intended to cover her HOPE Center work.

- The church controlled the HOPE Center: it funded the center, paid all the salaries, and held the lease for its offices.

   2. *Verdict-form question 1: whether Frazier held separate jobs*

Start with verdict-form question 1, whether Frazier held separate jobs. The first group of evidence doesn't address that question. It firmly establishes that Frazier held a job as associate pastor—but no one ever said otherwise. The question is whether she held a separate job as executive director. This evidence doesn't rule out that possibility. The third group of evidence is similar. The church's control over the HOPE Center doesn't dictate whether Frazier could have worked separate jobs for each organization.

The second group is more fitting. A failure to ask for a raise and her admission that she understood her pastor salary to cover her executive-director work goes to factor 4 of jury instruction 7: whether Frazier worked at the HOPE Center in contemplation of compensation beyond her role as Associate Pastor of Pastoral Care and Counseling. Tr. 306:1–3. And the other evidence goes to factor 2 of instruction 7: whether Frazier performed tasks at the HOPE Center that were not fairly or foreseeably encompassed or incidental to her duties as Associate Pastor of Pastoral Care and Counseling. Tr. 305:19–22. It might also go to factor 3: whether the tasks at the HOPE Center were numerous, substantial, and different from those she performed as Associate Pastor of Pastoral Care and Counseling. Tr. 305:23–25.

Defendant's strongest evidence is Frazier's admission that she understood her pastor salary to cover her HOPE Center work. Read in context, however, the jury might have interpreted that "admission" to refer to when she initially accepted her pastor offer. *See* Tr. 149:13–24. Frazier also testified that the scope of and her role within the HOPE Center expanded over time. *See, e.g.*,

---

[1] As Frazier points out, the termination letter was never admitted at trial. So the Court declines to consider it. *See LNC Invs., Inc. v. First Fid. Bank*, 126 F. Supp. 2d 778, 785 (S.D.N.Y. 2001). Even if the Court did consider it, it is far from dispositive: Defendant emphasizes that it was on church letterhead while Plaintiff stresses that it referred to her employment with the church and FCBC CDC separately. *See* Dkt. 112-6.

Tr. 47:1–48:16, 109:7–18. Even if Frazier's first job included some work at the HOPE Center, the jury might have concluded that her expanded role and new title indicated a new job. As for whether Frazier's duties changed, the part of the transcript Defendant cites refers only to whether her duties changed when her employment contract was transferred from the church to FCBC CDC. *See* Tr. 148:13–149:5. As noted, Frazier said her work changed over time. And the lack of negotiation and dual degrees have little bearing on whether acting as executive director was a separate job.

Zooming out, Defendant is simply pointing to some evidence going its way in a multifactor balancing test. But Frazier also presented evidence cutting her way, particularly on factors two and three. *See, e.g.*, Tr. 47:1–48:16 (pastor job description didn't include starting and running mental-health center); Tr. 109:7–18 (HOPE Center responsibilities expanded over time); Tr. 168:14–169:14 (explaining FCBC CDC's secular mission and separate corporate organization); Tr. 89:15–90:10 (Frazier had a clinical supervisor for her work at the HOPE Center, unlike her work as pastor); Tr. 91:23–94:1 (describing the differences in counseling techniques for the two jobs). The jury could have determined that Frazier's evidence was enough to find that she was separately employed as executive director, even with other evidence weighing in favor of Defendant. After all, the Court instructed the jury (with no objection from Defendant) to consider the "economic realities" and "the totality of the circumstances"; Frazier "d[id] not need to satisfy every factor." Tr. 250:7–12, 305:14, 306:5–7. Given this flexible inquiry and at least some evidence pointing in both directions, the Court can't say that the verdict was pure conjecture or that the evidence in Defendant's favor was overwhelming.

   3. *Verdict-form question 2: whether Defendant employed Frazier*

The next question to the jury was whether Defendant was Frazier's employer for her role as executive director. The evidence at trial established (and Defendant doesn't contest) that FCBC CDC was legally distinct from the church. *See* Tr. 168:14–170:16. The evidence also showed that the HOPE Center "joined" FCBC CDC "around January 2020." Tr. 163:14. So the jury could have found that her role as executive director was a job within FCBC CDC after January 2020.

Defendant's evidence is not to the contrary. Again consider the three groups of evidence. The first group establishes that the church was Frazier's employer for her role as pastor, but that question is separate from who employed her as executive director of the HOPE Center. The second group is about her pay and responsibilities; it has little to do with who employed her. The third group of evidence comes closest, suggesting that the HOPE Center and FCBC CDC were not truly distinct from the church. But that evidence is in tension with the evidence discussed above, which stressed FCBC CDC's legal separateness and the HOPE Center's secular mission. Plus, even if all the organizations were entangled, that would likely raise the prospect of joint employment. As explained above, that would mean that both the church and Defendant could be held liable.

Neither party has addressed the factors under jury instruction 8. But the jury was again instructed (and again with no objection from Defendant) to consider the "economic realities" and "totality of the circumstances." Tr. 250:13–251:18, 306:18, 307:7. Once the jury decided that Frazier's job as executive director of the HOPE Center was separate, it would have been logical to

conclude that FCBC CDC was her employer for that job after January 2020, even if they didn't know all the details of the HOPE Center's "join[ing]" FCBC CDC. So Defendant again hasn't shown that the verdict was pure conjecture or that its evidence was overwhelming—let alone that manifest injustice will result unless the Court grants the motion.

## II. The Rule 59 motion is denied

Defendant's Rule 59 motion also suffers from procedural shortcomings. In its opening brief, Defendant mentions Rule 59 twice—once each in the introduction and conclusion. Dkt. 113 at 1, 10. It doesn't say why a new trial is warranted. In its reply brief, Rule 59 is upgraded to have its own heading. *See* Dkt. 124 at 4. In the two paragraphs dedicated to Rule 59, Defendant gestures at two arguments: (1) "that controlling legal precedent … was overlooked in the [jury] instructions," and (2) "the jury's verdict [w]as against the weight of the evidence." *Id.* (citation omitted). Arguments first raised in reply briefs are forfeited. *See Kurtz v. Hansell*, 2021 WL 1143619, at *8 n.9 (S.D.N.Y. Mar. 24, 2021). But even considering the arguments on their merits, they fail.

Defendant's "controlling legal precedent" is the joint-employer doctrine. As explained above, that doctrine is far from controlling this case, and the jury instructions already covered any relevance the doctrine might have. Yet even if it were controlling, "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (internal quotation marks omitted). Defendant would simply present the case under a new theory after its old one failed. But it hasn't explained how the instructions reflect any legal error, let alone a prejudicial one. Plus, Defendant had ample opportunity to object to or help craft the jury instructions, yet it declined to do so. "A principle that strikes very deep is that a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result." Mary Kay Kane, *Federal Practice & Procedure (Wright & Miller)* § 2805 (3d ed. 2024). Defendant has not explained what the gross injustice is here, and the Court doesn't see any.

The weight-of-the-evidence argument is at least closer. Frazier's evidence was weak. But Defendant's was too. Of course, Frazier bore the burden to prove her case. But an argument about the "weight" of the evidence is less persuasive when there isn't much on Defendant's side of the scale. Plus, the key questions posed to the jury were broad, totality-of-the-circumstances inquiries, and credibility played at least some role in answering those questions. Considering the character of the evidence and the questions posed to the jury, the Court declines to say that it is "quite clear that the jury has reached a seriously erroneous result" or that there was some other "miscarriage of justice." *Bevevino*, 574 F.2d at 684. The verdict wasn't "egregious." *DLC*, 163 F.3d at 134.

## III. The fees motion is granted in part

The Court "retains discretion to determine what constitutes a reasonable fee," but it "must abide by … procedural requirements for calculating those fees." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (cleaned up). "[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a presumptively reasonable

8

fee." *Id.* (internal quotation marks omitted). "A detailed explanation of the lodestar calculation is unnecessary, but … the district court should at least provide the number of hours and hourly rate it used to produce the lodestar figure." *Id.* at 166–67.

### A. Reasonable rate

The Court first determines the reasonable hourly rate. "The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008). The rate should reflect "the prevailing market rates for counsel of similar experience and skill," which may "include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Townsend v. Benjamin Enter., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (citation omitted). The *Johnson* factors are the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983) (internal quotation marks omitted). As other courts have recognized, some of these factors are more logically considered as part of the hours inquiry or entirely separately, and the Court does the same here. *See Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 537 n.1 (S.D.N.Y. 2008); *Hardaway v. Ridgewood Corp.*, 706 F. Supp. 2d 436, 439–40 (S.D.N.Y. 2010). The Court also notes that Frazier didn't make any argument with respect to factors 4, 6, 7, 10, or 11.

Frazier requests the following rates, with the different rates within a category reflecting changes over time:

- Law students and law clerks: $150 and $175/hr
- Paralegals: $175 and $195/hr
- Associate Attorney Mairead Kate Burns: $350/hr
- Senior Associates Alex Berke and Rosa Aliberti: $395, $495, and $550/hr
- Partner Laurie Berke-Weiss: $695 and $725/hr

Frazier "concedes that the Firm's rates fall outside of the typical ranges awarded in this District," but she argues that they should be upheld because the firm typically charges these rates to paying clients. Dkt. 108 at 5. The Court acknowledges this as evidence of the reasonable rate. *See Rozell*, 576 F. Supp. 2d at 544. Yet "[i]n setting a reasonable rate, the question is not the rate that the particular client desires or is willing to pay, but rather the hourly rate at which a client who

wished to pay no more than necessary would be willing to compensate his attorney." *Gong v. Sarnoff*, 2024 WL 1621347, at *5 (S.D.N.Y. Apr. 15, 2024) (cleaned up). Here, the Court did not see anything that would justify a premium rate. Perhaps recognizing that the rates are likely to be reduced, Frazier has also proposed certain reduced rates.

*Law-student, law-clerk, and paralegal rates*: Frazier acknowledges that the services of law students, law clerks, and paralegals are typically billed at the same rate. *See* Dkt. 108 at 7–8; *see also Hong v. Mommy's Jamaican Mkt. Corp.*, 2024 WL 1242507, at *6 (S.D.N.Y. Mar. 21, 2024). Frazier proposes a reduced rate of $125 per hour. Defendant counters that $75 per hour is typical but fails to cite a recent case for that argument. The Court finds $125 per hour reasonable and within the range typically awarded in this district. *See Hong*, 2024 WL 1242507, at *6.

*Burns's rate*: Defendant's main argument for reducing Burns's rate is that she was a first-year associate. (In fact, Burns was admitted to the bar while this case was ongoing, so some of her hours are billed at the law-clerk rate.) Frazier cites one case awarding $300 per hour for an associate, but that associate had substantially more experience than Burns. *See Lewis v. Am. Sugar Ref., Inc.*, 2019 WL 116420, at *4 (S.D.N.Y. Jan. 2, 2019). "Courts in this District 'typically award rates in the range of $125–$215 to associates with three years of experience or less.'" *Galindo v. Yummy Foods Deli Corp.*, 2024 WL 947283, at *17 (S.D.N.Y. Jan. 17, 2024) (quoting *Rios v. Louya Corp.*, 2015 WL 5918194, at *4 (S.D.N.Y. Oct. 8, 2015)), *report and recommendation adopted*, 2024 WL 515245 (S.D.N.Y. Feb. 9, 2024). Given that this rate was set in 2015 (but seeing no other helpful authority cited by either side), the Court will award the upper end: $215 per hour.

*Berke's and Aliberti's rates*: Berke has been practicing for nine years, Aliberti for seven. As Defendant points out, the descriptions of their representative matters leaves something to be desired. *See* Dkt. 109 ¶¶ 10, 13. Yet Defendant also fails to cite any authority for an alternative rate for similarly experienced attorneys. Frazier, on the other hand, cites a series of cases justifying a rate of $350 per hour for senior associates in employment cases. *See* Dkt. 108 at 6 (collecting cases). The Court reduces Berke's and Aliberti's rates accordingly

*Berke-Weiss's rate*: Berke-Weiss has over thirty-five years' experience as an employment lawyer. Dkt. 109 ¶ 12. Defendant again cites no authority for reducing Berke-Weiss's rate, instead fighting the number of hours billed. Frazier has cited authority justifying an hourly rate up to $600 for especially experienced employment-law attorneys. *Id.* at 7 (collecting cases). So the Court will award that rate.

### B. Reasonable hours

The Court next determines the reasonable number of hours. The Court must "take[] account of claimed hours that it views as excessive, redundant, or otherwise unnecessary." *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (internal quotation marks omitted). Again, it is a case-specific inquiry in which the Court "may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Id.* (citation omitted). "A party seeking attorney's fees bears the burden of supporting its claim of hours expended by

accurate, detailed, and contemporaneous time records." *Gamero v. Koodo Sushi Corp.*, 328 F. Supp. 3d 165, 173 (S.D.N.Y. 2018).

Frazier submitted time records that were reasonably detailed. *See* Dkt. 108-2. Defendant responded by marking up nearly every entry, with little explanation for its proposed adjustments. *See* Dkt. 118-2. But Defendant does justify a couple of specific reductions. First, Berke accidentally double-billed the second day of trial. Dkt. 108-1 at 32. Second, Berke-Weiss billed thirteen hours for simply observing the trial from the gallery. *See id.* at 31–32. Frazier has conceded the first point and hasn't responded to the second, so she has failed to carry her burden to justify those hours. *See* Dkt. 125 at 1, 3. The Court will delete them as excessive and unnecessary.

Although many of Defendant's specific objections lack explanation, "the district court has the authority to make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) (internal quotation marks omitted). Having reviewed the billing records, many administrative and other internal tasks were billed at full freight, justifying a small reduction. More importantly, although this case was novel, it was not especially difficult or sprawling: trial took three relatively short days, two live witnesses testified at trial, just three depositions were taken, and the complaint had essentially one count (wage-notice and -statement violations are nearly always tacked on, and they were not part of the trial here). Frazier's original bill of nearly 640 hours is excessive. That said, Frazier did have to oppose two dispositive motions and go to trial. Frazier suggests that any across-the-board cut should not exceed 20%. Dkt. 125 at 5 (collecting cases). The Court agrees and reduces each hours entry by 20%.

Based on the rate and hour reductions, the Court calculates this lodestar (rounded to the nearest tenth of an hour and nearest dollar):

| Attorney | Adjusted Rate | Adjusted Hours | Total |
|---|---|---|---|
| Berke-Weiss | $600 | 3.1 | $1,860 |
| Berke | $350 | 143.0 | $50,050 |
| Aliberti | $350 | 12.3 | $4,305 |
| Burns (as attorney) | $215 | 184.9 | $39,754 |
| Burns (as law clerk) | $125 | 72.4 | $9,050 |
| Other staff | $125 | 78.4 | $9,800 |
| **Total** | | | **$114,819** |

### C. Further adjustment based on limited success

"[T]he most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (internal quotation marks omitted). "Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success

11

achieved. Indeed, this comparison promotes the court's central responsibility to make the assessment of what is a reasonable fee under the circumstances of the case." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (cleaned up). But the Court also recognizes that "a statutory fee award need not be proportional to the amount of damages recovered." *Gamero*, 328 F. Supp. 3d at 177 (citing *City of Riverside v. Rivera*, 477 U.S. 561, 564–65, 574 (1986)).

Here, Frazier sought unpaid wages of $172,575. Dkt. 118-1 at 6. She recovered $15,600. *See* Dkt. 104 at 2. After tacking on other violations and liquidated damages (but not prejudgment interest), Frazier sought $355,150. Dkt. 118-1 at 6. She recovered $36,200. Dkt. 104 at 2–3. This limited success justifies a reduction. *See Kassim v. City of Schenectady*, 415 F.3d 246, 255–56 (2d Cir. 2005).

Courts vary substantially in how much they reduce fees based on limited success. *See Caltenco v. G.H. Food Inc.*, 2021 WL 4481205, at *7–8 (E.D.N.Y. Sept. 30, 2021) (collecting cases ranging from 10% to 85%). Courts reduce fee awards most dramatically when the unsuccessful claims are unrelated to the successful ones (so work on the unsuccessful ones can be filtered out) or when there is some wrongful conduct. *See id.*; *see also Gamero*, 328 F. Supp. 3d at 177–78; *Sanchez v. Oceanside First Class Roofing, Inc.*, 818 F. App'x 106, 108 (2d Cir. 2020). In those situations, fee awards are often reduced by 50% or more. When recovery is simply low, courts typically reduce the fee award by 10% to 25%. *See Sanchez v. I&A Rest. Corp.*, 2017 WL 2537814, at *6 (S.D.N.Y. May 22, 2017) (collecting cases); *Hardaway*, 706 F. Supp. 2d at 442.

Considering all these factors, the Court reduces the fee award another 20%, to $91,855.20.

### D. Costs

Lastly, Frazier requests costs of $3,796.27. Defendant hasn't opposed that request, so the Court will award those costs.

## CONCLUSION

For these reasons, Defendant's motion is DENIED. Plaintiff's motion is GRANTED IN PART. The Court awards attorneys' fees and costs of $95,651.47. The Clerk of Court is directed to close Dkts. 107 and 111.

SO ORDERED.

Dated: August 6, 2024
New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge